## STATE v. HARBOUR.

It is not error to refuse requested instructions fully covered by the instructions given by the court on its own motion.

Where a witness testified that accused immediately after the shooting of decedent stated that she had shot decedent, and in her testimony stated that she did not shoot decedent intentionally or willfully, the court was not required to charge that the evidence was circumstantial, and to define circumstantial evidence.

In the absence of specifications in the abstract of the particulars in which the evidence is insufficient to justify the verdict, or specifications of the particular errors of law relied on by accused, the denial of a new trial is justified.

Under Code Cr. Proc. § 419, providing that exceptions may be taken by accused on a matter of law in admitting or rejecting evidence, such exceptions must be taken and preserved in the record, or they are not available on motion for new trial or in the appellate court.

The "abstract" is the "record" on which the court on appeal determines a case, and it only refers to the original record when there is a conflict in the abstracts presented by the parties, and where it appears from the journal of the Supreme Court that the bill of exceptions was withdrawn and amended by inserting exceptions therein, but no change was made in the abstract, the court must be governed entirely by the abstract.

The Code as to abstracts adopted with reference to civil cases and Supreme Court rules 7, 9, 10, 22 S. D., p. 3, R. S. C., 124 N. W. vii-ix, providing for an abstract of the record setting forth so much thereof as is necessary to an understanding of the questions presented for decision, etc., are by rule 11 (124 N. W. ix) made applicable to criminal cases, with certain exceptions as to time of service and the like, and the abstract served by accused must be regarded as a verity and the Supreme Court cannot examine the original record and bill of exceptions, though the bill of execptions has been withdrawn and amended.

Where no exceptions were taken to the instructions, the court on appeal must assume that they correctly stated the law.

(Opinion filed January 25, 1911.)

Appeal from Circuit Court, Pennington County. Hon. W. G. Rice, Judge.

Mary Harbour was convicted of manslaughter in the second degree, and from the judgment and order denying a new trial she appeals. Affirmed.

*Frank D. Bangs,* for appellant. *S. W. Clark, Atty. Gen.,* and *Chauncey L. Wood, State's Atty.,* for the State.

CORSON, J. Upon an information duly filed by the state's attorney of Pennington county, charging the defendant with the crime of murder in the killing of one Rose Adams on the 6th day of March, 1908, by shooting her with a revolver, she was convicted of the crime of manslaughter in the second degree, and, from the judgment and order denying a new trial, she has appealed to this court.

Numerous errors are assigned, but the Attorney General objects to the consideration of these errors for the following reasons: (1) The bill of exceptions must be disregarded, as it appears from the abstract herein that said bill of exceptions as settled contains no specifications of error. (3) The appellant does not predicate error on the order overruling her motion for a new trial,

as the overruling of same is not assigned as error, and the record, therefore, does not present for review the question of the sufficiency of the evidence to support the verdict. (4) No exceptions have been taken and preserved by the defendant to any ruling of the court in the admission or exclusion of evidence on the trial. Therefore no alleged errors of law as to the rulings of the court on the trial can be reviewed.

We are inclined to take the view that the Attorney General is right, and that under the record presented to us in this case we cannot properly review the evidence or the alleged errors of law presented by the assignment of errors on the part of the defendant. An examination of the bill of exceptions as contained in the abstract discloses the fact that there are no specifications of the particulars in which the evidence is insufficient to sustain the verdict or other decision. Neither is there any statement specifying the particular errors in law upon which the party will rely for a reversal of the judgment. It is further disclosed by the abstract that no exceptions were preserved by the defendant to any ruling made by the court in the rejection or admission of evidence, and it is further disclosed by the abstract that there is no assignment of error that the court erred in overruling the defendant's motion for a new trial. The only exceptions appearing to have been taken and preserved by the defendant are to the refusal of the court to give certain instructions requested on the part of the defendant. Instructions Nos. 1, 2, 3, 5, 6, and 7 requested were fully covered by the court in its charge to the jury on its own motion. Instruction No. 4 was properly refused for the reason that it assumes that "the evidence relied upon by the state is fully circumstantial." This assumption was clearly not sustained by the record.

It is true that there was no person present at the time of the alleged shooting, except the defendant and the deceased; but there was evidence tending to prove that the defendant stated immediately after the shooting that she fired the shot that resulted in the death of the deceased, and in her testimony in her own behalf she says, "I did not shoot her intentionally or willfully." It is dis-

closed by the evidence that the deceased, generally known as Rose Adams, was taken from an orphan asylum by the defendant when she was about 18 months of age; that she had always lived with the defendant up to the time of her death, at which time she was between 17 and 18 years of age; that, on the day of her death, she came home from school after 4 o'clock and very soon thereafter the evidence tended to prove that there was loud talking in the apartments of the defendant; and that soon thereafter two shots were fired, the ball from one of which penetrated the left temple of the deceased, near the edge of the hair and just in front of the ear, from which she died in about two hours after the shot was fired. So far as the record discloses, no other persons were in the rooms or apartments occupied by the defendant except herself and the deceased. The defendant, with her husband and the deceased, were living in an apartment house in rooms which were on the second floor and were on one side of the hall extending through the building. Dr. Elliott resided with his family on the opposite side; the doctor occupying a small room for an office in the front over the lower hall between the two apartments. He testified: "I heard loud talking. I could not distinguish the words at first that I heard in the west flat. I could not tell how long it continued because I did not pay very much attention to it until later. * * * About 5 o'clock I passed * * * into my private office, * * * and while I was there I heard loud talking in the front room in the west flat which attracted my attention to the words I distinguished, 'Mama, don't strike me,' and immediately it sounded as though some one had just jerked away. After hearing these words I heard rapid steps passing from the front to the rear of the flat. It sounded like two persons. It was then a short space of time, just about as quick as they could pass from the front to the rear, I next heard two shots fired, and after the second shot I heard a drop like something had fallen. It sounded to me like it was in the rear part of the flat that I heard these shots, in the kitchen. At that time I was in my private room, and I went out * * * into the corridor and got up to the head of the stairs, * * * and Mrs. Harbour came out of her kitchen

there with her revolver in her hand. * * * She had her revolver in her hands, and she said to tell Charley Harbour that I have shot Rose, and I am going to shoot myself, and she repeated that. She was flourishing the revolver in her hand and motioning it. She spoke in a loud shrill tone. The words, 'Don't strike me, Mama,' were said in a sort of a pleading tone of voice, quite loud, loud enough so I could hear it."

It will be seen from this evidence of Dr. Elliott that the defendant made the statement to him immediately after the shooting that she had shot the deceased. This, taken in connection with her own testimony, was sufficient to justify the jury in finding from the direct evidence that she fired the fatal shot resulting in the death of the deceased. The court therefore was not required to charge the jury that the evidence was circumstantial and to define the nature of circumstantial evidence. In the absence, therefore, in the abstract of any specification of the particulars in which the .evidence was insufficient to justify the verdict, or as to the particular errors of law relied on by the defendant, the court was clearly justified in denying the motion for a new trial. And, as no exceptions were preserved by the defendant to the rulings of the court in the admission or rejection of evidence, the assignment of errors as to such ruling cannot be considered by this court.

Section 419 of the Code of Criminal Procedure provides: "On the trial of an indictment or information, exceptions may be taken by the defendant to the decision of the court upon a matter of law by which his substantial rights are prejudiced, and not otherwise, in any of the following cases: * * * (3) In admitting or rejecting witnesses or testimony, or in deciding any question of law, not a matter of discretion, or in charging or instructing the jury upon the law, on the trial of the issue." It will be noticed that, by the language of this section exceptions may be taken in admitting or rejecting evidence, and it necessarily follows that, unless exceptions are taken and preserved in the record, they cannot be made available on a motion for a new trial or in the appellate court.

The court's attention has been called to the fact that it appears from the journal of this court that the bill of exceptions was withdrawn and amended by inserting the exceptions therein, but no change has been made in the abstract, and as the abstract is the record upon which this court determines a case, and it only refers to the original record when there is a conflict in the abstracts presented by the respective parties, we cannot properly look into the original bill of exceptions and must be governed entirely by the abstract.

In Noyes v. Lane, 2 S. D. 55, 48 N. W. 322, this court held, as appears by the headnote, as follows: "The rules of this court contemplate a carefully prepared abstract or abstracts, which shall take the place of the original record, for the purpose of the hearing and decision of the case. The case will be heard and decided upon the facts so presented, and the original papers will not be examined in this court, except to settle a disagreement between abstracts." In the opinion this court says: "Our rules of court contemplate a carefully prepared abstract, which will ordinarily take the place of the record, for the purposes of the argument and decision of the case. * * * The obvious purpose of these rules is to provide an abstract or abridgement, which shall fairly exhibit so much of the record as will present the questions of error, to be used as a substitute for a usually voluminous record, much of which would ordinarily have no bearing upon the particular questions to be considered and decided. The appellant's abstract is a representation, on his part, that the statements therein are a fair and true presentation of so much of the record as he deems necessary to a full understanding of the questions presented. If respondent concede its correctness, he indicates it by his silence; otherwise he prepares an additional abstract, as in rule 18. If he raise no question as to its correctness, he is taken to accept it, and it is treated by the court as a full and fair statement of the facts, by which the hearing and decision of the case is to be governed. The court takes such abstract, so admitted by both parties to be correct, as the undisputed facts, and only examines the original record when there is a disagreement between the appel-

lant's and respondent's abstracts. * * * The rules of this court in respect to the office òr force of the abstract follow more nearly those of Iowa than of any other state whose rules we have examined, and are substantially like theirs, and the foregoing intimations are directly in line with the decisions of that state"—citing a number of Iowa authorities.

While the provisions of our Code with reference to abstracts were adopted with reference to civil cases, it is provided by an additional rule that these provisions are made applicable as well to criminal causes with certain exceptions as to the printing of such abstracts specified in the rules. The rules then in force were embodied in the rules adopted by this court in 1891 and practically constitute rules Nos. 7, 8, 9, and 10 of the present rules of this court, adopted in March, 1910 (22 S. D. p. 3, R. S. C., 124 N. W. vii-ix). Rule 11 (22 S. D. p. 3, R. S. C., 124 N. W. ix) provides, "Rules 7, 9 and 10 are hereby made applicable as well to criminal cases," with certain exceptions as to the time of service, and in certain cases a less number of copies are required to be served.

In this case no further or additional abstract was served. Hence, for the purposes of this decision, the abstract served by the appellant must be regarded as a verity, and this court, under the decision from which we have quoted, is precluded from examining the original record and bill of exceptions.

In view of the fact, however, that the case is an important one to the defendant, and the omission of her counsel to correct the abstract to conform with the bill of exceptions as amended was evidently an inadvertence on the part of counsel, we have deemed it proper to examine the evidence and rulings of the court in the admission and rejection of evidence as appears by the abstract, and assume for the purposes of this decision that proper exceptions were taken to the rulings of the trial court. From such examination we are satisfied that the evidence was clearly sufficient to warrant the jury in finding the verdict returned by them to the court. And, upon a careful examination of the rulings of the court as to the admission and rejection of evidence, we fail to

discover any error committed by the court that would entitle the defendant to a new trial.

About 30 assignments of error have been discussed by counsel; but no useful purpose would be served by attempting a separate discussion of these various assignments of errors in this opinion. No exceptions were taken to the charge of the court, and we must assume, therefore, that the court correctly stated the law applicable to the case to the jury.

Finding no error in the record before us, the judgment of the circuit court and order denying a new trial are affirmed.